## FERRICK v. EIDLITZ et al.

(Supreme Court, Appellate Division, Second Department. January 10, 1908.)

MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENCE—RES IPSA LOQUITUR.

Defendants, contractors for the erection of a building, had a temporary shed constructed in the basement over the dynamos to protect them and to support laborers while doing certain work. The structure having served its purposes, plaintiff, an employé, was directed to remove it, and after taking down one of the sections thereof, the removal whereof had nothing to do with the structural condition of the remaining section, stepped on said section, in the structural condition of which no change had been made since its use, except that one joist was cut about three-quarters

through to accommodate a pipe, whereupon it fell. *Held*, that the structure's collapse was prima facie proof of negligence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 881, 898, 955.]

Gaynor, J., dissenting.

Appeal from Trial Term, Queens County.

Action by Michael Ferrick against Otto M. Eidlitz and another. From a judgment dismissing the complaint, and from an order denying a motion for new trial, defendants appeal. Reversed, and new trial granted.

Argued before HIRSCHBERG, P. J., and HOOKER, RICH, MILLER, and GAYNOR, JJ.

Gilbert D. Lamb, for appellant.
Theodore H. Lord, for respondents.

HOOKER, J. The defendants were engaged as contractors in constructing the Hotel Belmont in the borough of Manhattan, and the plaintiff was employed by them as a common laborer. In the basement had been constructed a roof or shed for the purpose of protecting the dynamos there located from dust and refuse. The structure was built by placing joists about 12 feet long between parallel steel girders. The joists were 18 inches or 2 feet apart, and ordinary flooring planks had been laid transversely of the joists to form the roof of the structure. The joists were 2 by 6 inches. The roof of the structure had also been used by plasterers and steam fitters. On the day the plaintiff was injured he had been instructed by the defendants' foreman to go upon this structure and take it down by removing first the flooring planks and passing them to the floor below, a distance of 12 or 14 feet, and then removing the joists themselves. The structure was in two or more sections, with as many series of joists; each series being supported by its own steel girders at either end of the joists. The plaintiff had assisted in successfully taking down and removing one section of the structure, and had stepped upon another section for the purpose of removing it, when the section upon which he stepped collapsed and he was precipitated upon one of the dynamos and seriously injured. For damages on account of his injuries he has brought this action. The complaint was dismissed at the close of all the evidence, and from the judgment for the defendants the plaintiff appeals.

This structure, whether shed, scaffold, or platform, was put to a twofold use: First, to protect the dynamos; and, second, to support laborers while engaged in details of the construction of the building. It had served its usefulness and was to be removed. It appeared that no changes had been made in its structural condition between the time it was used for those purposes and the day the plaintiff was injured, except that one joist was cut about three-quarters of the way through to accommodate a pipe which had been run upward through the roof of the shed. The fall of that section of the shed upon which the plaintiff stepped is not satisfactorily accounted for; but in our opinion the structure's collapse itself was prima facie proof of negli-

gence. The plaintiff stepped upon it for the purpose of taking it apart, but had not commenced to do so at the time it collapsed. One of the purposes for which it was constructed was to support workmen. Its fall while being properly used in the manner for which it was set up was of itself evidence that it was unsafe, and presumed negligence on the part of those whose duty it was to provide for the plaintiff a safe place to work. Stewart v. Ferguson, 164 N. Y. 553, 58 N. E. 662; Griffen v. Manice, 166 N. Y. 188, 59 N. E. 925, 52 L. R. A. 922, 82 Am. St. Rep. 630; Green v. Banta, 48 N. Y. Super. Ct. 156, affirmed 97 N. Y. 627; Haggblad v. B. H. R. R. Co., 117 App. Div. 838, 102 N. Y. Supp. 1039; Johnson v. Roach, 83 App. Div. 351, 82 N. Y. Supp. 203. The plaintiff had nothing to do with the construction of the shed. The jury would have been justified in finding that the removal of the section which had already been taken down had nothing to do with the structural condition of the section yet remaining; for the joists of the latter were separately supported between independent steel girders.

The judgment should be reversed, and a new trial granted; costs to abide the event.

RICH, J., concurs. HIRSCHBERG, P. J., not voting.

MILLER, J. I agree with my Brother HOOKER that the maxim "res ipsa loquitur" may be applied to the fall of the structure which caused the plaintiff's injuries. The section which fell was entirely independent of the one which had just been taken down. The plaintiff had just gone upon it and had not begun to take it down; but I do not think it is necessary to rely upon the maxim. It is in evidence that shortly after the collapse of the structure a joist was discovered in the débris broken in two at a point where a hole had been bored to admit the passage of a pipe, leaving only a narrow rim of wood. I think a jury would have the right to infer that the structure collapsed because of the weakened joist (it was 13 to 14 feet long, unsupported except by the beams at either end), and we are now testing a dismissal of the complaint. The structure had been used as a scaffold by the steam fitters and plasterers, and the plaintiff had a right to assume, when he was directed to go upon it by the superintendent, that it was safe. I think the plaintiff had a right to go to the jury upon the question of the negligence of the superintendent—the case is brought under the employer's liability act (Laws 1902, p. 1748, c. 600) —in sending the plaintiff upon this weak structure without warning him. The fact is proven that the joists were visible from below, and the superintendent himself testified that the structure "was not a very strong construction." He says that he warned the men to be careful because of that fact; but this was for the jury.

I think the jury could have found from the evidence that the defendants' superintendent sent the plaintiff upon a structure which he knew to be dangerous, without giving any warning of the danger. If so, it was error to dismiss the complaint.

GAYNOR, J. (dissenting). The fall was not in itself evidence of negligence. The maxim that the thing speaks for itself does not apply. They were tearing down the structure—the rule of safe place to work does not apply.